UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KATHLEEN M. LOWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 2:18-cv-00428-JVB-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Andrew M. Saul,* | ) |
| *Commissioner of Social Security*,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Kathleen M. Lowe appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and Disabled Widow's Benefits. (ECF 1). The appeal was referred to the undersigned Magistrate Judge on April 22, 2019, by District Judge Joseph S. Van Bokkelen pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), Local Rule 72-1(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 16).

Having reviewed the record and the parties' arguments, I FIND that two of Lowe's four arguments in support of a remand are persuasive, and accordingly, RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings. This Report and Recommendation is based on the following facts and principles of law.

### I. FACTUAL AND PROCEDURAL HISTORY

Lowe applied for benefits in November 2016, alleging disability as of September 1, 2012. (ECF 13 Administrative Record ("AR") 11, 195-207). Lowe's claim was denied initially and upon

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see, e.g., Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

reconsideration.  (AR 120-21, 144-45).  After a timely request (AR 172-73), a hearing was held on August 15, 2017, before administrative law judge ("ALJ") Michelle Whetsel, at which Lowe, who was represented by counsel, and a vocational expert testified (AR 45-95).  On December 20, 2017, the ALJ rendered an unfavorable decision to Lowe, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments.  (AR 11-29).  Lowe's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

Lowe filed a complaint with this Court in November 2018, seeking relief from the Commissioner's decision.  (ECF 1).  In her appeal, Lowe alleges that the ALJ: (1) erred in evaluating her mental impairments through failing to analyze the listings, mischaracterizing the evidence, and failing to incorporate the opinions of the state agency reviewing psychologists in the residual functional capacity ("RFC") ; (2) erred in evaluating her physical RFC; and (3) erred in evaluating her subjective symptoms.  (ECF 19 at 12-26).

At the time of the ALJ's decision, Lowe was 61 years old (AR 96), and her work history included work stamping decals on trucks (AR 56).  In her application, Lowe alleged disability due to depression, PTSD, anxiety, two detached retina surgeries, "Gall Bladder," and osteoporosis.  (AR 241).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it] is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(D). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether she can perform her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R. §§ 404.1520(a)(iv), 404.1545, 416.920(a)(iv), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv).

3

negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On December 20, 2017, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 11-29). At step one, the ALJ concluded that Lowe had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date. (AR 14). At step two, the ALJ found that Lowe had the following severe impairments through her date last insured of March 31, 2015: degenerative disc disease of the lumbar spine with osteoarthritic changes and anxiety/depression. (AR 14).

At step three, the ALJ concluded that Lowe did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 14). Before proceeding to step four, the ALJ determined that Lowe's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 17-18). The ALJ assigned Lowe the following RFC:

> [T]he claimant as the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch and crawl. Mentally, the claimant is able to remember and follow simple, but not detailed instructions. The claimant is able to perform the tasks assigned, but not always at a production rate pace. However, she is able to meet the end of day work goals. Last, the claimant is able to have occasional interaction with her co-workers, supervisors and the general public.

(AR 16). Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Lowe was able to perform her past relevant work as a marker II or folder. (AR 28). Therefore, Lowe's applications for DIB and SSI were denied. (AR 28).

4

*C. Listing 12.06*

Lowe challenges the ALJ's step-three finding that she did not meet or medically equal listing 12.06, anxiety and obsessive-compulsive disorders. Specifically, Lowe argues that the ALJ failed to consider whether she met the paragraph "C" criteria.

1. <u>Applicable Law</u>

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App'x 1)). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id.* (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The claimant bears the burden of proving her condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380. Having said that, "an ALJ should mention the specific listings [she] is considering and [her] failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

Listing 12.06 requires that a claimant either meet the criteria of "paragraphs A" and "B" or the criteria of "paragraph C". *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06. The criteria for "paragraph C" are as follows:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>

> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06.

> b. The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder. If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by the paragraph.
>
> c. The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(G)(2)(b)-(c).

2. <u>The ALJ's Reasoning</u>

Here, when considering the listings at step three and after finding Lowe did not satisfy "paragraph B", the ALJ stated, in relevant part: "[t]he undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the medical evidence and testimony at the hearing fails to establish the presence of the 'paragraph C' criteria for listing 12.06." (AR 15).

3. <u>Analysis</u>

Lowe argues that the ALJ erred by failing to properly analyze and explain how she concluded that Lowe did not meet the "paragraph C" criteria. (ECF 19 at 12). As such, Lowe contends that the ALJ's step-three analysis does not provide the Court with any ability to engage in meaningful review. *See, e.g., Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (remanding the ALJ's step-three finding regarding listing 1.04 as perfunctory); *Brindisi ex rel. Brindisi*, 315 F.3d at 786 (remanding where the ALJ's "extremely brief" discussion of the listings was "devoid of any analysis that would enable meaningful judicial review"). The ALJ's two-sentence analysis does not create the requisite logical bridge explaining how the ALJ came to the conclusion that Lowe did not meet the "paragraph C" criteria.

The record reflects that Lowe has suffered from her mental impairments for at least two years as required by listing 12.06. Following her March 2015 suicide attempt, Lowe began treatment through Porter-Starke services, which she continued through at least June 27, 2017. (AR 328-40, 521-26, 632-44, 727-1556). Lowe also argues that she satisfied criterion 1 of "paragraph C" because she engaged in ongoing mental health therapy and psychosocial supports which diminished the symptoms and signs of her mental disorder. The record shows that Lowe attended anywhere from five to ten appointments a month at Porter Starke, including counseling appointments, medication management appointments, case management appointments, and group therapy appointments. (AR 521, 632-34, 636, 738, 741-42, 752-58, 806-07, 1028-62). Lowe testified that her case manager managed her doctor's appointments and ensured that she bathed. (AR 65). Lowe argues that the evidence reflects that her therapy at Porter Starke diminished the signs and symptoms of her mental disorder, because she was no longer actively suicidal and participated fully in group therapy. (AR 644, 1429-30, 1512, 1547, 1554-55). The ALJ failed to discuss or analyze this criterion of "paragraph C", making it impossible for the Court to determine whether the ALJ properly considered Lowe's mental impairments and whether they met or equaled listing 12.06.

Lowe further alleges that she meets the second criterion of "paragraph C," which requires achieving marginal adjustment with minimal capacity to adapt to changes in the environment and to

demands that were not already part of her daily life. Lowe argues that despite therapy and mental health treatment, she still had difficulties with "relating well with others and having positive socialization skills and was unable to identify problematic behavior that would cause deficits to achieve her goals." (AR 812). She also suffered an anxiety attack while on a camping trip administered by Porter-Starke and began to isolate herself due to her anxiety. (AR 1223-25). She required assistance from her case manager to make phone calls to medical providers and to complete her housing application process. (AR 1199, 1215). Her case manager noted that Lowe got easily confused and needed help breaking down her housing application in a way she could understand. (AR 1199). Her case manager also ensured that Lowe bathed, helped her with organization and budgeting, and phoned pharmacies on Lowe's behalf. (AR 64-65, 1291). While the Court does not find that the medical record indicates that Lowe meets or equals listing 12.06, the Court cannot conduct meaningful review where the ALJ fails to discuss or analyze the "paragraph C" criteria when the evidence suggests it is possible that Lowe met the criteria. Such a perfunctory consideration of Lowe's impairments and the listing fails to provide "any explanation of why [Lowe's] impairments are not severe enough to qualify as disabled within the meaning of the Act." *Allen v. Barnhart*, 408 F. Supp. 2d 598, 602 (N.D. Ill. 2006); *see Barnett*, 381 F.3d at 670 (reversing the ALJ's decision because the Court could not determine if the ALJ considered whether the claimant, who was not credible, had an impairment that equaled a listing).

      Furthermore, the ALJ's perfunctory analysis at step three mischaracterized the record, at least in part. Repeated mischaracterization of evidence in the record requires remand. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). The ALJ, in discussing the "paragraph B" criteria, found that Lowe "does suffer from anxiety, [but] she has been able to overcome it and actively participate in group therapy, go camping, shop, drive independently, have relationships with family, and she wished to begin to volunteer." (AR 27). The ALJ then found that the ability to perform these tasks show that "she is at most moderately limited in the area of social functioning." (AR 27). Lowe argues that this is a gross mischaracterization of her ability to function. (ECF 19 at 17).

The ALJ notes that Lowe actively participated in group therapy. However, the ALJ fails to discuss the multiple examples wherein she was avoidant, disruptive, angry, had difficulty taking turns in conversation appropriately, lacked focus, and required redirection from the therapist. (AR 806-07, 812, 821, 829, 847, 852, 868, 879, 916, 977, 982, 1103, 1140, 1148, 1164, 1273, 1283, 1466, 1509, 1527). While there were times where Lowe actively participated and behaved appropriately in group therapy, the ALJ failed to acknowledge the numerous sessions in which she struggled to behave appropriately. Mental impairments often fluctuate from day to day, and the ALJ's failure to discuss Lowe's bad days requires remand. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job." (citations omitted)); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." (citations omitted)). The ALJ's failure to account for the group therapy sessions where Lowe struggled in interacting with others constitutes impermissible cherry-picking of the record.

The ALJ also used Lowe's participation in a camping trip to support the decision that she is only moderately limited in her social functioning. While the ALJ mentioned in passing that this trip was connected to her therapy with Porter-Starke, the ALJ failed to discuss how a camping trip with one's therapists would differ from camping with friends and peers in everyday life. Moreover, the ALJ ignored the fact that Lowe had an anxiety attack during the camping trip and requested to return home, although no one would take her. (AR 1225). Lowe then stated that she "was going to start isolating herself" and reporting continuing anxiety following the camping trip. (AR 1225). The ALJ improperly ignored evidence that the camping trip did not go smoothly and caused both an anxiety attack and continuing anxiety. The ALJ also discussed Lowe's ability shop independently. Once again, the ALJ correctly notes that Lowe is capable of driving and does some shopping for herself, but the ALJ ignores the evidence that she cannot complete shopping without severe anxiety. Lowe testified that she suffered anxiety attacks while she shopped, and that she often cried in grocery store aisles. (AR 59-60). The ALJ may not discuss

only the evidence that supports her decision while ignoring contrary evidence. *See Kaminski v. Berryhill*, 894 F.3d 870, 874-75 (7th Cir. 2018); *Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018).

The ALJ also discussed Lowe's desire to volunteer. While Lowe stated she wanted to volunteer, there is no evidence in the record to support her actually volunteering or being capable of volunteering. A person's expressed desire to work is not inconsistent with an ability to work. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). The desire to work or to volunteer does not equate to a finding of no disability. The ALJ improperly cherry-picked evidence in the medical record that supported a finding of no disability while ignoring evidence to the contrary.

All of the foregoing evidence that ALJ either ignored or mischaracterized in her perfunctory analysis at step three warrants "a more complete discussion of the reasons why [Lowe] was not able to meet the listing." *Marinaccio v. Berryhill*, No. 15-CV-00270-LGF, 2017 WL 4541753, at *2 (W.D.N.Y. Oct. 11, 2017) (citation omitted).

## IV.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's final decision be REVERSED, and that the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.[3]

---

[3] Lowe alleges that the failure to analyze "paragraph C" criteria requires a remand for an award of benefits. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (citation omitted); *see Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367-68 (N.D. Ga. 2001) (articulating that the court may remand the case for an award of DIB where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt"). Here, the Court cannot conclude that all of the factual issues have been resolved with respect to Lowe's assertions of error as to Listing 12.06 and that the record supports a finding of disability. *See, e.g., Boiles v. Barnhart*, 395 F.3d 421, 427 (7th Cir. 2005) (declining to simply reverse the case and award benefits where the record needed to be more factually developed concerning the claimant's pseudoseizures).

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 9th day of January 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge